KEN LINHART *et al.*, Plaintiffs-Appellees, v. BRIDGEVIEW CREEK DEVELOPMENT, INC., *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—07—2712

Opinion filed May 20, 2009.

Arnstein & Lehr LLP, of Chicago (Arthur L. Klein, Arthur L. Janura, Hal R. Morris, and Jason B. Hirsh, of counsel), for appellants.

Sneckenberg, Thompson & Brody, LLP, of Chicago (William J. Sneckenberg, Matthew L. McBride, and Emilie G. Kaplan, of counsel), for appellees.

JUSTICE COLEMAN delivered the opinion of the court:

This cause arises from the purchase of four townhomes in Palatine, Illinois. Subsequent to purchase, plaintiffs discovered various defects and damage to the property which were not obvious during plaintiffs' final walk-through prior to closing. The same defects were reported to defendants by a village inspector prior to completion of construction of the property. Plaintiffs filed a complaint alleging fraudulent misrepresentation and breach of the implied warranty of habitability against the seller-builder of the property. A jury trial resulted in a verdict in favor of plaintiffs in the amount of $1,380,781. After a separate hearing on the consumer fraud count, count III of the complaint, the trial court awarded punitive damages. The trial court denied defendants' motion for a new trial and entered judgment on the verdict. Defendants appeal seeking reversal of the judgment and remand for a new trial.

## BACKGROUND

Between July 1997 and February 1998, plaintiffs, Ken and Beverly Linhart (Unit 79), Amy Gable (Unit 75), Jane Longo and Lloyd Clark (Unit 77), and Diane Latta (Unit 73), purchased four townhomes from

defendant Wayne Johnson, which were constructed by Carriageway Builders, Inc. (Carriageway). Wayne Johnson owned and operated Carriageway. His son, C.J. Johnson, was the project manager in charge of overseeing the construction of the property at issue. The property is located at 73-79 N. Crescent Avenue in Palatine, Illinois, and is part of the Bridgeview subdivision.

The four townhomes were constructed as a single building with a common foundation, slab, common walls, and roof. During construction, the Palatine village inspector reported that the foundation was sinking and an engineer should assess the problem. Prior to October 1997, cracks appeared in the foundation walls. The building settled between 7 inches to 10 inches and plaintiffs claim that the settlement caused damage to the interior and exterior of the building. Plaintiffs all claimed extensive damage to the structure including, windows and doors either sticking shut or remaining open, walls, floors and ceilings pulling apart, slanted floors, and flooding from cracks in the foundation.

In 2001, plaintiffs filed this lawsuit against Wayne Johnson and Carriageway seeking damages based on implied warranty of habitability, fraudulent misrepresentation and concealment, and consumer fraud pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2006)). Following a jury trial in the circuit court of Cook County, the jury returned a verdict in favor of plaintiffs on all counts in the amount of $1,380,781. The trial court awarded punitive damages in the amount of $5,000, plus attorney fees, each to plaintiffs Amy Gable, Jane Longo, Lloyd Clark, and Diane Latta. This appeal followed.

## ISSUES ON APPEAL

Defendants raise numerous issues on appeal: (1) whether the jury verdict was supported by the manifest weight of the evidence on the fraud and consumer fraud claims; (2) whether a single verdict form was proper since six separate plaintiffs incurred differing damages, and whether the single verdict form relieved plaintiffs of their burden of proof; (3) whether the jury was properly instructed on the elements of implied warranty of habitability; (4) whether the jury was properly instructed as to the correct measure of damages for a breach of the implied warranty of habitability; (5) whether the trial court committed plain error in the manner it instructed the jury; and (6) whether the trial court properly awarded punitive damages.

## ANALYSIS

### A. Manifest Weight of the Evidence

### 1. Liability for Fraud

Defendants argue that the verdict on the fraud and consumer fraud counts of the complaint was against the manifest weight of the evidence because plaintiffs failed to establish that they detrimentally relied on misrepresentations made by defendants prior to executing the sales contracts to purchase the townhomes.

We will only reverse a jury verdict where the verdict is contrary to the manifest weight of the evidence in the light most favorable to the nonmoving party. *Maple v. Gustafson*, 151 Ill. 2d 445, 455 (1992). A verdict is against the manifest weight of the evidence when it is unreasonable, arbitrary, and not based on the evidence or the opposite conclusion is clearly evident. *Barth v. State Farm Fire & Casualty Co.*, 228 Ill. 2d 163, 179 (2008).

■ The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996). The elements of common law fraud must be proven by clear and convincing evidence. *Washington Courte Condominium Ass'n—Four v. Washington-Golf Corp.*, 267 Ill. App. 3d 790, 833 (1994).

Amy Gable, Jane Longo, Lloyd Clark, and Diane Latta were plaintiffs on the fraud counts.[1] There was ample evidence to support the jury's verdict for plaintiffs on the issue of fraud. Each plaintiff testified that at various times Wayne and C.J. Johnson told them that the cracks in the foundation were "normal" and "a result of natural settling." During preclosing walk-throughs with each plaintiff, C.J. Johnson, on behalf of Carriageway, or Wayne Johnson made false statements about the foundation. Clark and Longo testified that Wayne Johnson told them there was a 20-year warranty on the basement and foundation. Johnson never produced the warranty. Gable testified that C.J. Johnson told her "it's not like the house is going to sink or anything." Latta also noticed cracks in the foundation. She testified that when she asked C.J. Johnson about the cracks, he told her not to be concerned. Latta testified that when she asked to have a structural engineer examine the problem, C.J. Johnson told her that

---

[1]Ken and Beverly Linhart were only parties to the claim for breach of the implied warranty of habitability.

had been done and he would provide the report. Johnson never gave her an engineer's report.

■ The jury heard evidence sufficient to conclude that defendants knew these statements were false at the time they were made because a village inspector informed them that the foundation was sinking and they should consult an engineer. C.J. Johnson testified that he was aware of the cracks prior to October 1997. Preconstruction soil testing was conducted in the area and revealed significant water content. The company retained by Carriageway to conduct the preconstruction soil testing recommended further testing, especially in the lower areas of the subdivision. C.J. Johnson testified that when construction on the foundation began at the property in question he added stone to the soil because of the soil conditions, but never ordered soil testing at that specific location. A rational jury could find that defendants' statements to plaintiffs were to reassure them and assuage their concerns so that they would proceed with the purchase of the townhomes. Plaintiffs each testified that they relied on those statements and purchased the homes. The damage to the foundation and the structure of the building was established by plaintiffs' testimony regarding all of the defects now prevalent in their homes. Plaintiffs had three experts testify to the damage and the cost of repairs. Moreover, defendants did not contest that the structure is damaged, but provided their own expert to estimate the cost of repairs.

Based on the foregoing review of the evidence, the jury's verdict was not unreasonable or arbitrary. Therefore, we hold that the verdict imposing liability for common law fraud was not against the manifest weight of the evidence. See *Washington Courte Condominium Ass'n—Four*, 267 Ill. App. 3d at 815. Additionally, if a plaintiff has established a *prima facie* case for common law fraud, then that is sufficient to conclude that the same facts satisfy statutory fraud. *Washington Courte Condominium Ass'n—Four*, 267 Ill. App. 3d at 824. Accordingly, we also hold the verdict for plaintiffs on the consumer fraud count of the complaint was not against the manifest weight of the evidence.

## 2. Amount of the Award

Defendants argue that the jury's verdict was against the manifest weight of the evidence because it was not based on the evidence. Defendants contend that the evidence presented by plaintiffs' experts indicated a maximum repair cost of $733,453. Defendants obtained this number by adding together the estimates of plaintiffs' experts for repairs to the structure at $506,400 and for aboveground repairs of $227,053. Defendants further argue that plaintiffs provided only a cost

estimate for repairing the entire structure rather than presenting evidence of the individual repair cost for each townhome. Defendants assert that the replacement cost ($1,380,781) was awarded without crediting defendants for previously received value.

The determination of damages is a question of fact that is within the discretion of the jury and is entitled to substantial deference. *Snover v. McGraw*, 172 Ill. 2d 438, 447 (1996). This court will not upset a jury's award of damages "unless a proven element of damages was ignored, the verdict resulted from passion or prejudice, or the award bears no reasonable relationship to the loss suffered." *Gill v. Foster*, 157 Ill. 2d 304, 315 (1993).

■ The damage award in this case relates to the loss suffered and is the maximum that experts testified it would cost to repair the damage. Based on the testimony of all the experts, the verdict represents the maximum cost of repairs, not "replacement" costs as defendant argues. Plaintiffs' first expert, Ted Carlson, a structural engineer, gave an estimate for installing a pier system to shore up the foundation, which would require lifting the entire structure. Carlson could not state with certainty that no additional damage would occur, but estimated a total of $506,400. Plaintiffs' expert Gene Holland, a structural engineer and architect, testified that the only feasible way, economically and logistically, to repair the structure would be total demolition and rebuilding at a cost of $1,380,781 because Carlson's plan would cause more damage. Plaintiffs called a third expert, John Schreiber, a construction manager, to testify and give an estimate for repairing the aboveground damage caused by the settlement and after completing Carlson's plan ($227,053). Defendants had their own expert, Dave Hendron, testify to the cost of damages. Defense expert Hendron testified that the structure could be repaired with the addition of 10 to 15 concrete piles to shore up the foundation at a cost of $5,000 a piece. Thus, the expert testimony indicated a maximum cost of $1,380,781. We find the verdict was reasonably related to the damages incurred and, therefore, was not against the manifest weight of the evidence. See *Snover*, 172 Ill. 2d at 447.

## B. Single Verdict Form

■ Defendants argue that they are entitled to a new trial because the trial court did not use separate verdict forms for each plaintiff on the allegation of breach of the implied warranty of habitability. Defendants contend that the trial court abused its discretion because it used a single verdict form, which allowed each plaintiff to recover damages without individually presenting evidence to support his or her specific portion of the award, relieving each of his or her burden of proof.

Separate verdicts are appropriate only when recovery on different demands is sought. *Gausselin v. Commonwealth Edison Co.*, 260 Ill. App. 3d 1068, 1077 (1994). Several plaintiffs may be properly joined, but if their causes of action are separate and distinct and their damages are different, the judgment should award each separate relief, not an aggregate sum. *Gold v. Ziff Communications Co.*, 322 Ill. App. 3d 32, 45 (2001), citing *Caton v. Flig*, 343 Ill. App. 99, 101 (1951). The form of verdicts is a matter within the sound discretion of the trial court. *Gold*, 322 Ill. App. 3d at 45.

Here, the trial court allowed separate verdict forms for the fraud counts, but a single verdict form for breach of the implied warranty of habitability. Ordinarily, each plaintiff has the burden of proving each element of the cause of action against each defendant. However, for the purposes of breach of implied warranty of habitability, plaintiffs brought the allegations as if they were a single plaintiff. Plaintiffs did not make separate demands nor did they present evidence of estimated damage to individual units; instead, they sought a single demand as a set of plaintiffs for reparation to the building as a whole. The four townhomes shared a common foundation, walls, and roof system, and sustained similar damage throughout each unit. Plaintiffs alleged that they collectively incurred a single injury. "[T]he inclusion of multiple plaintiffs on a single form was proper because [the] set of plaintiffs sought a single recovery." *Gold*, 322 Ill. App. 3d at 45. The single verdict form did not relieve plaintiffs of having to prove that defendants caused the damage to the structure. We reject defendants' argument that apportionment of the single award will be difficult, since plaintiffs will resolve that issue with their common counsel. Therefore, the trial court did not abuse its discretion by allowing a single verdict form. See *Gold*, 322 Ill. App. 3d at 45.

## C. Legal Accuracy of Jury Instruction for the Implied Warranty of Habitability.

■ Next, defendants argue that the trial court improperly instructed the jury as to the elements of the implied warranty of habitability. Defendants contend that the implied warranty of habitability applies only to latent defects that interfere with a dweller's use of that unit; citing *Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc.*, 186 Ill. 2d 419 (1999). Plaintiffs concede the implied warranty of habitability only applies to latent defects.

"Although jury instructions are generally reviewed for an abuse of discretion, [the] standard of review is *de novo* when the question is whether the applicable law was accurately conveyed." *Barth*, 228 Ill.

2d at 170. "[W]hen a party tenders a jury instruction that states the legal principles applicable to [a] case and that instruction is supported by the evidence, it is an abuse of discretion to refuse to give the instruction if the refusal prejudices the party's right to a fair trial." *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 562-63 (2008).

Contrary to plaintiffs' assertion, defendants have not waived this issue for appeal. See *Kravis v. Smith Marine, Inc.*, 60 Ill. 2d 141, 147 (1975). Defendants tendered a remedial instruction that included language requiring the defects to be latent. Thus, the trial court had the opportunity to consider this issue. The remedial instruction offered by defendants is included in the record with the trial court's "marked" instructions. We know from the instructions that are in the record that the court refused defendants' proposed instruction in favor of plaintiffs' instruction, which required only "defects." The law is clear that the implied warranty of habitability is only applicable for latent defects that interfere with the dweller's use of that unit as a residence. *Board of Directors of Bloomfield Club Recreation Ass'n*, 186 Ill. 2d at 426. Thus, the jury should have been instructed that the defects must be latent. However, any omission in the instructions did not prejudice defendants because the only evidence of any defects in the building that were presented at trial constituted latent defects. In ruling on defendants' motion for a new trial, the trial court duly noted that the only evidence of defects presented were latent defects in the foundation and structure of the building. "A liberal application of the harmless error doctrine to jury instruction issues is favored when it appears that the rights of the complaining party have in no way been prejudiced." *Brooks v. City of Chicago*, 106 Ill. App. 3d 459, 466 (1982). Therefore, any error in the omission of the word "latent" from the jury instruction was harmless since defendants were not prejudiced. See *Johnson v. Johnson*, 386 Ill. App. 3d 522, 544 (2008).

### D. Measure of Damages

■ Next, defendants argue that the trial court committed reversible error because if property damage is permanent, or if repair is impracticable, then the proper measure of damages is limited to the diminution in value. Defendants cite Illinois Pattern Jury Instructions, Civil, No. 30.18 (3d ed. 1994) (IPI Civil 3d No. 30.18), *Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 259 Ill. App. 3d 836 (1994), and *Park v. Sohn*, 89 Ill. 2d 453 (1982), in support of this argument. Defendants assert that the trial court allowed plaintiffs to recover the complete cost of replacing the townhomes ($1,380,781) in contravention of Illinois law.

The trial court has discretion to determine which instructions to give the jury and that determination will not be disturbed absent an abuse of that discretion. *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273 (2002). A reviewing court will not reverse a trial court for giving faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant. *Sinclair v. Berlin*, 325 Ill. App. 3d 458, 464 (2001).

Where the lawsuit is for breach of the implied warranty of habitability, the usual measure of damages will be the reasonable cost of correcting the defects. *Witty v. C. Casey Homes, Inc.*, 102 Ill. App. 3d 619, 625 (1981). "Where, however, application of that measure of damages would require an unreasonable destruction of the work done by the contractor or would incur costs disproportionate to the results obtained, the appropriate measure of damages is the diminution in value attributable to the defects in construction." *Witty*, 102 Ill. App. 3d at 625.

In the case at bar, the only evidence presented was on the cost of repairing the defects. Defendants never objected to the evidence when it was offered. See *Romanek-Golub & Co. v. Anvan Hotel Corp.*, 168 Ill. App. 3d 1031, 1039 (1988). Not only did defendants fail to object to the evidence of cost of repairs, but defendants presented their own expert testimony estimating the cost of repairing the defects. Defendants failed to introduce any diminution in value evidence. Indeed, defendants only asserted that diminution in value was the appropriate measure of damages during the instruction conference when they offered a damages instruction that reflected diminution in value as the proper measure of damages. However, defendants cannot complain on appeal of evidence that they themselves brought out. *Chubb/Home Insurance Cos. v. Outboard Marine Corp.*, 238 Ill. App. 3d 558, 568 (1992). Moreover, as plaintiffs argue and their expert testified, the most economical remedy would be to demolish the building and rebuild. Since all the evidence presented referred to the cost of repair and there was no evidence that the townhomes were anything other than uninhabitable, the trial court properly instructed the jury on the parties' theory of the case that was supported by the evidence. Therefore, the trial court did not abuse its discretion and commit reversible error by instructing the jury on cost of repairs as the measure of damages. See *Brdar v. Cottrell, Inc.*, 372 Ill. App. 3d 690, 704-05 (2007).

### E. Plain Error in the Jury Instructions

■ Defendants argue that the judge's reading of the jury instructions may have differed from the written instructions and the

subsequent absence of the jury instructions from the court file resulted in plain error depriving them of a fair trial. Defendants further contend that the burden of proof instruction for fraud inaccurately stated the law and permitted the jury to find liability without establishing each element of fraud for each defendant. Defendants claim these were errors sufficient to warrant reversal.

Under the plain-error doctrine, courts of review may consider issues that were otherwise waived. *People v. Barney*, 363 Ill. App. 3d 590, 593 (2006). Trial errors only merit reversal if the error so prejudiced the appellant that it deprived him of a fair trial and substantially impaired the judicial process itself. *Matthews v. Avalon Petroleum Co.*, 375 Ill. App. 3d 1, 8 (2007).

Initially, we address plaintiffs' contention of waiver. We find that defendants have not waived the issue of an improper burden of proof instruction for fraud since the record contains a copy of the instruction that indicates it was given over defendants' objection. Thus, the defendants preserved their objection for appeal. However, the alleged errors do not warrant reversal. The court's "marked" copy of the instructions is contained in the record, though the "unmarked" jury copy appears to have been lost. The "marked" copy indicates which instructions the trial judge agreed to give and, as plaintiffs point out, a review of the trial transcript indicates that the instructions marked as given were read. Moreover, the burden of proof instruction for fraud read as a whole did not allow the jury to find some elements as to one defendant and some elements as to another defendant to find liability.[2] The last paragraph of the instruction states, "if you find from your consideration of all the evidence that any of these propositions has not been proved by clear and convincing evidence as to *both* Defendants, then your verdict should be for the Defendants and you should use Verdict Form B." (Emphasis added.) Perhaps the instruction could have been worded differently; however, it does not misstate plaintiffs' burden of proof and, thus, did not deprive defendants of a fair trial resulting in reversible error. See *Knight v. Chicago Tribune Co.*, 385 Ill. App. 3d 347, 358 (2008).

### F. Punitive Damages

■ Finally, defendants argue that the trial court abused its discretion by awarding punitive damages pursuant to the Illinois Consumer Fraud Act because plaintiffs never requested punitive damages in their complaint and are, therefore, barred from recovering punitive damages. Plaintiffs respond that defendants could not have been

---

[2]Defendants quote only a portion of the instruction at issue in their argument for reversal on the basis that the instruction misstated the law.

surprised by the request for punitive damages because their second amended complaint contained a prayer for any relief provided by the Consumer Fraud Act and the statute expressly allows a court to award punitive damages. 815 ILCS 505/1 *et seq.* (West 2006).

In reviewing a trial court's decision to award punitive damages, we take a three-step approach, considering (1) whether punitive damages are available for the particular cause of action, using a *de novo* standard, (2) whether, under a manifest weight of the evidence standard, the defendants acted fraudulently, maliciously or in a manner that warrants such damages, and (3) whether the trial court abused its discretion in imposing punitive damages. *Caparos v. Morton*, 364 Ill. App. 3d 159, 178 (2006).

Here, in count III of plaintiffs' second amended complaint, plaintiffs sought recovery under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2006)), for any relief provided under the Act. The Consumer Fraud Act explicitly allows for the recovery of punitive damages where the conduct of the defendant was willful or intentional and done with evil motive or reckless indifference to the rights of others. 815 ILCS 505/10a(a) (West 2006). Thus, the first factor is satisfied. Turning to the second factor, we review the trial court's reasons for imposing punitive damages to determine if its judgment was contrary to the manifest weight of the evidence. As previously noted, where a plaintiff has established a *prima facie* case for common law fraud, the same facts satisfy statutory fraud. *Washington Courte Condominium Ass'n— Four*, 267 Ill. App. 3d at 824. The evidence adduced at trial supports the judgment. Defendants intentionally avoided mitigation of the inadequate foundational support for the townhomes, failed to obtain the necessary consultations with a structural engineer, ignored the soil test results that revealed significant water content, and deliberately misrepresented to plaintiffs that the cracks in the foundation were normal and that the building was not "going to sink." The doors and windows do not function properly. The horizontal and vertical surfaces are out of alignment. Defendants' actions induced plaintiffs to purchase the townhomes and rendered them unfit for use as homes. Therefore, we hold that the trial court's judgment awarding punitive damages is not against the manifest weight of the evidence.

Turning to the third factor, we consider whether the trial court abused its discretion by awarding punitive damages. The trial court entered a written order, which is included in the appellate record. In the trial court's written order it is clear that the court considered the parties' arguments and submissions on this issue and also considered the financial position of the defendants. The court awarded $5,000,

plus attorney fees, each to plaintiffs Amy Gable, Jane Longo and Lloyd Clark, and Diane Latta. The trial court found that the evidence revealed egregious examples of fraud and misrepresentation by both defendants. Based on the foregoing, the trial court did not abuse its discretion in awarding punitive damages. Therefore, we affirm the award of punitive damages based on the three-step test set out in *Caparos*. 364 Ill. App. 3d at 178.

Based on the foregoing, we affirm the judgment of the trial court.

Affirmed.

MURPHY, P.J., and QUINN, J., concur.