METLIFE INVESTORS USA
INSURANCE COMPANY,
Plaintiff,

v.

Daniel ZEIDMAN as Trustee for Esther
Zeidman Trust and Lavell S. Pratt as
Personal Representative of the Estate
of Sherry Pratt, Defendants.

No. 09–cv–2596 (ADS)(ETB).

United States District Court,
E.D. New York.

Aug. 31, 2010.

Unger, Stokes, Acree, Gilbert, Tressler & Tacktill, PL, by: Christopher C. Gilbert, Esq., of Counsel, Orlando, FL, for Plaintiff.

McElroy, Deutsch & Mulvaney, LLP, by: Joseph P. Lasala, Esq., of Counsel, New York, NY, for Defendant Daniel Zeidman as Trustee of the Esther Zeidman Trust.

Adrienne R. Klein, Esq., Nyack, NY, for Defendant Lavell S. Pratt as Personal Representative of the Estate of Sherry Pratt.

Cline, King & King, P.C., Columbus, IN, by: Peter Campbell King, Esq., of Counsel, for Defendant Lavell S. Pratt as Personal Representative of the Estate of Sherry Pratt.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Plaintiff MetLife Investors USA Insurance Company ("MetLife") filed this interpleader action requesting that the Court determine the disposition of $975,000 that MetLife had received in payment for a now-rescinded annuity contract. Each of the named defendants, Daniel Zeidman as Trustee of the Esther Zeidman Trust (the "Zeidman Trust") and Lavell S. Pratt as Personal Representative of the Estate of Sherry Pratt (the "Pratt Estate") claims the $975,000. In addition, the Pratt Estate has asserted a counterclaim against MetLife and a cross-claim against the Zeidman Trust for violations of the Illinois Right to Publicity Act.

Presently before the Court are (1) a motion by the Pratt Estate to amend its counterclaim and cross-claim, (2) a motion by MetLife to dismiss the Pratt Estate's counterclaim; to be discharged of liability in connection with the interpleaded funds; and to be dismissed from this case, (3) a motion by the Zeidman Trust to dismiss the Pratt Estate's cross-claim and for judgment on the pleadings, (4) a motion by the Pratt Estate to lift a stay of discovery. For the reasons set forth below, the Court denies the Pratt Estate's motions in their entirety, and grants the motions by MetLife and the Zeidman Trust in their entirety.

## I. BACKGROUND

On February 11, 2008, the Zeidman Trust, through its Florida-based trustee Daniel Zeidman, purchased a "variable annuity" from MetLife for $975,000 (the "Annuity"). Pursuant to the resulting contract, MetLife agreed to aggressively invest the $975,000 Annuity purchase price (minus certain fees) on behalf of the Zeidman Trust, and to then make payments to the Zeidman Trust based on the performance of the investment.

As with any annuity, the Annuity here was tied to the life of a natural person. The natural person that measured the Annuity was one Sherry Pratt, a 38–year old terminally-ill woman living in a nursing home in Chicago, Illinois. Sherry Pratt's role in the Annuity was strictly auxiliary: the fact of her being alive or deceased determined the Zeidman Trust's rights under the Annuity, but she herself had no rights under the contract. Why was Sherry Pratt named as the measuring life for the Annuity? Strangely, she was not related to either Daniel or Esther Zeidman, and in fact does not appear to have even met them. Rather, Sherry Pratt appears

to have been chosen because of her poor health.

To understand why Sherry Pratt's health was relevant, it is first necessary to understand that the Annuity provided two different kinds of payouts. First, it provided the kind of payout most commonly associated with annuities, whereby, starting on a date not more than ten years after the purchase of the annuity, MetLife would make regular payments to the Zeidman Trust for as long as Sherry Pratt lived. Second, and more importantly, if Sherry Pratt died before the regular payments began, the Annuity provided a "death benefit."

The death benefit agreed to in the Annuity provided that when Sherry Pratt died, the Zeidman Trust would be paid at least $975,000. In light of the fact that MetLife was aggressively investing the $975,000 that the Zeidman Trust paid for the Annuity, this would protect the Zeidman Trust from losing money if the investment had decreased in value. However, the annuity contract also provided that, if the $975,000 investment had grown in worth by the time Sherry Pratt died, MetLife would pay the Zeidman Trust the full value of the investment. In addition, MetLife would also then pay the Zeidman Trust a further forty cents for every dollar that the investment was valued above $975,000. In other words, the Zeidman Trust was guaranteed all the upside of MetLife's aggressive investment of the $975,000—plus a 40% bonus on any gains—without taking on any downside risk.

Of course, no payout would be made until Sherry Pratt died. Moreover, if Sherry Pratt lived beyond the ten year anniversary date of the purchase of the Annuity, the death benefit would expire, and the regular annuity payments would begin. Thus, the strategy depended on measuring the annuity by the life of a person who was likely to die within a short time. *Compare Western Reserve Life Assur. Co. of Ohio v. Conreal LLC*, 715 F.Supp.2d 270, 272–74 (D.R.I.2010) (describing a similar scheme).

On February 23, 2008, just twelve days after the Zeidman Trust purchased the Annuity, Sherry Pratt died. The Zeidman Trust then made a demand for the death benefit under the Annuity, and MetLife in turn commenced a routine investigation into the Annuity's formation. MetLife alleges that approximately nine months later, it received a letter from a lawyer for the Pratt Estate, claiming that Sherry Pratt had never consented to be used as the measuring life for the Annuity. Rather, the attorney contended that Sherry Pratt did not even have the physical ability to sign the relevant consent documents. Shortly after it sent that letter, the Pratt Estate demanded payment to it of the full $975,000 Annuity purchase price.

On January 9, 2009, MetLife rescinded the Annuity, stating that the Zeidman Trust had made material misrepresentations in connection with its purchase of the Annuity. The Zeidman Trust denied making any such misrepresentations, but it did not contest the rescission of the annuity contract. Rather, it sought only the return of the $975,000 purchase price. Four days later, on January 13, 2009, MetLife filed the present interpleader case in the United States District Court for the Southern District of Florida. At that time MetLife deposited the $975,000 Annuity purchase price with the clerk of the court, citing competing demands for the $975,000 from the Zeidman Trust and the Pratt Estate.

On February 27, 2009, the Zeidman Trust answered MetLife's complaint, and cross-claimed against the Pratt Estate to recover the interpleaded funds. The Zeid-

man Trust asserted that, as a result of the rescission of the contract, it was entitled to a return of the purchase price. On March 20, 2009, the Pratt Estate also answered the complaint, and cross-claimed for the interpleaded funds on the ground that the Zeidman Trust had violated the Illinois Right of Publicity Act by using Sherry Pratt's identity without her permission. In addition, the Pratt Estate asserted a counterclaim against MetLife, alleging a similar violation of the Illinois Right of Publicity Act, and demanding unspecified damages.

On June 19, 2009, upon motion by the Zeidman Trust in the Southern District of Florida, the case was transferred to this Court. Then, on November 23, 2009, the Zeidman Trust moved for judgment on the pleadings and also moved to dismiss the Pratt Estate's cross-claim. On December 17, 2009, MetLife similarly moved to dismiss the Pratt Estate's counterclaim, and also sought to be dismissed from the case and discharged of liability. Then, on January 15, 2010, on motion by the Zeidman Trust, United States Magistrate Judge E. Thomas Boyle stayed all discovery. On March 4, 2010, the Pratt Estate moved to lift the discovery stay.

Before the Court decided any of these pending motions, the Pratt Estate moved to amend its cross-claim and counterclaim and to assert new claims against additional third parties. The Court denied the Pratt Estate's original motion to amend without prejudice for failure to attach a proposed amended complaint, and on July 20, 2010, the Pratt Estate filed the presently-pending renewed motion to amend, this time attaching a proposed amended complaint.

The Pratt Estate's proposed amended complaint ("PAC") asserts new causes of action against the Zeidman Trust and MetLife for fraud, conspiracy to commit fraud, and unjust enrichment. It also asserts claims against eight new putative third-party defendants who allegedly helped the Zeidman Trust and MetLife to use Sherry Pratt's identity without her permission.

As for new facts alleged in the PAC, the most relevant relate to one Debra Flowers, the third party defendant allegedly given the task of procuring Sherry Pratt's consent for the Annuity. The Pratt Estate alleges that, although Debra Flowers provided what she claimed to be Sherry Pratt's signature on the Annuity paperwork, Debra Flowers never even spoke with Sherry Pratt, let alone met with her. Rather, Debra Flowers contacted Sherry Pratt's aunt, Sharon Pratt, who lived in New Jersey. The Pratt Estate claims that Debra Flowers misrepresented herself to Sharon Pratt as working for "people who 'invested in hospice'", (PAC, ¶ 28), and that Debra Flowers told Sharon Pratt that she had some "tax forms", (PAC, ¶ 33), on which she needed Sharon to sign Sherry Pratt's name. These "tax forms" were in fact the consent forms for use of Sherry Pratt's identity for the Annuity. Based on the alleged misrepresentations of Debra Flowers, Sharon Pratt signed Sherry Pratt's name on the forms. There is no allegation that Sharon Pratt ever contacted Sherry Pratt in connection with signing Sherry Pratt's name, or that Sharon Pratt otherwise was an agent of Sherry Pratt.

MetLife and the Zeidman Trust now oppose the Pratt Estate's renewed motion to amend, primarily on grounds that the PAC fails to state any valid claim.

## II. DISCUSSION

### A. The Pratt Estate's Motion to Amend

The Pratt Estate seeks to amend its counterclaim and cross-claim by adding eight new third party defendants and asserting three new claims against MetLife

and the Zeidman Trust. The Court will first discuss the addition of the new third party defendants, and then will review the claims against MetLife and the Zeidman Trust.

### 1. The Pratt Estate's Claims Against the Proposed Third Party Defendants

■ The Pratt Estate seeks to assert claims in this case against third party defendants Debra Flowers; Menachem (Mark) Berger; Abraham Gottesmann; Patient Financial Services, LLC; Management Brokers, Inc.; US Planning Group; Woodbury Financial Services, Inc.; and Moishe (Marc) Cohen. The Pratt Estate contends that each of these putative third-party defendants was involved in the alleged misuse of Sherry Pratt's identity, thereby giving rise to causes of action for violation of the Illinois Right of Publicity Act, common law fraud, conspiracy to commit fraud, and unjust enrichment.

■ Federal Rule of Civil Procedure 14 governs when a defendant seeks to assert claims against a person who is not yet a named party in the case. Rule 14 provides in pertinent part:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. . . .

Thus, under Rule 14, a defendant may only assert a third party claim against a party that may be liable for the claims asserted against that defendant.

Here, the Pratt Estate has not complied with this rule. First, plaintiff MetLife has filed an interpleader claim against the Pratt Estate, and as such, the Pratt Estate is not facing *any* liability as a defendant. Rather, the Pratt Estate merely has the opportunity to seek to be awarded the interpleaded funds, and, under the alleged facts, no third party defendant could be said to be "liable" for the claim asserted against the Pratt Estate.

■ In addition, even if the Pratt Estate did have potential liability here, that liability would not provide the basis for the Pratt Estate's putative third party claims. Each claim that the Pratt Estate seeks to assert against the putative third party defendants is solely for harm done directly to the Pratt Estate. By contrast, Rule 14 limits a defendant to joining third parties that share or supersede the defendant's liability to the plaintiff.

The Court therefore denies leave to the plaintiff to assert claims against the putative third party defendants. The Court does so without prejudice to the Pratt Estate's right to assert such claims in an appropriate court and proceeding.

### 2. The Pratt Estate's Claims Against MetLife and the Zeidman Trust

In the PAC, the Pratt Estate seeks to assert four substantive claims against MetLife and the Zeidman Trust. Both MetLife and the Zeidman Trust contend that all four of these claims are futile, and that the Court should therefore deny the Pratt Estate's motion to amend.

■ In deciding whether to grant a motion to amend, a Court must consider, among other things, whether the amended complaint fails to state a valid claim for relief. If a proposed amended complaint fails to state a valid claim for relief, then the amendment is futile, and should not be permitted. *See, e.g., Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir.2008).

In determining futility of amendment, the Court applies the same standard used to decide a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals,*

282 F.3d 83, 88 (2d Cir.2002); *Baron v. Complete Management, Inc.*, 260 Fed. Appx. 399, 400–01 (2d Cir.2008) (applying the *Twombly* summary judgment standard in deciding amendment futility). Under the now well-established *Twombly* standard, a complaint amendment would be futile only if the amended complaint would not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills*, 572 F.3d 66 (2d Cir.2009) (quoting *Ashcroft v. Iqbal*, ── U.S. ──, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

■ "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 129 S.Ct. at 1950.

**a. The Illinois Right of Publicity Act**

■ The Pratt Estate seeks to assert a counterclaim against MetLife and a cross-claim against the Zeidman Trust for violation of the Illinois Right of Publicity Act ("IRPA"), based on their use of Sherry Pratt's identity in connection with the Annuity. Both MetLife and the Zeidman Trust contend that, even accepting the facts pleaded in the PAC as true, the Pratt Estate has not stated a valid claim under this statute. The Court agrees.

The IRPA prohibits the unauthorized use of a person's identity for commercial purposes. The relevant statutory provision provides in pertinent part:

A person may not use an individual's identity *for commercial purposes* during the individual's lifetime without having obtained previous written consent from the appropriate person....

765 ILCS 1075/30(a) (emphasis added). "Commercial purposes" is defined in pertinent part by the statute as "the *public* use or holding out of an individual's identity ... in connection with the ... sale of a product...." 765 ILCS 1075/5 (emphasis added). As there is no indication to the contrary, the Court assumes that the IRPA employs the term "public" in its common meaning. *See Export–Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, 609 F.3d 111, 121 (2d Cir.2010) (citing *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.")). In this case, the most relevant definition of "public" appears to be "accessible to or shared by all members of the community," or "exposed to general view." *Webster's Third New International Dictionary: Unabridged* 1836 (1976).

Here, the Pratt Estate alleges that, without obtaining her consent, MetLife and the Zeidman trust used Sherry Pratt's identity as the measuring life for the Annuity. This allegation may partly satisfy the statute in the sense that Sherry Pratt's identity could be said to have been used

"in connection with the ... sale of a product"—that is, it was used in connection with the sale of the Annuity. 765 ILCS 1075/5. However, this allegation is not sufficient to state a claim under the IRPA, because there are no facts alleged showing that MetLife and the Zeidman Trust made "public" use of Sherry Pratt's identity. To the contrary, the alleged facts, as well as the Annuity documents themselves, show that the Annuity was a private contract between MetLife and the Zeidman Trust. Except in the context of later litigation, neither the existence of the Annuity nor its underlying documentation was ever allegedly published or otherwise made accessible to the public. In the Court's view, the use of Sherry Pratt's identity was thus quintessentially private, and as such, it cannot form the basis for a claim under the IRPA. *Compare, e.g., Toney v. L'Oreal USA, Inc.,* 406 F.3d 905 (7th Cir.2005) (applying the IRPA in the context of the public use of the plaintiff's image on hair product packaging).

In addition, to the extent that the Pratt Estate contends that it also is asserting a common law claim for violation of the right of publicity, any such claim was superseded by the IRPA. *See Blair v. Nevada Landing P'ship,* 369 Ill.App.3d 318, 322–23, 307 Ill.Dec. 511, 859 N.E.2d 1188 (Ill.App.2d Dist.2006) (noting that the IRPA replaced the common law right of publicity). The Court therefore finds that the Pratt Estate's claims against MetLife and the Zeidman Trust under the IRPA are futile.

### b. Common Law Fraud and Conspiracy to Commit Fraud

The Pratt Estate also seeks to assert common law claims for fraud and conspiracy to commit fraud against MetLife and the Zeidman Trust. Both Met-Life and the Zeidman Trust maintain that the Pratt Estate has not stated valid causes of action under either of these theories.

As a preliminary matter, none of the parties address the choice of law to be applied to these claims. While the Pratt Estate and MetLife cite to Illinois law, the Zeidman Trust relies on both Illinois and New York law. Ultimately, however, the Court finds that choice of law is not determinative, and therefore the Court need not resolve the issue.

The elements of common law fraud under Illinois law are:

(1) a false statement of material fact;

(2) defendant's knowledge that the statement was false;

(3) defendant's intent that the statement induce the plaintiff to act;

(4) plaintiff's reliance upon the truth of the statement; and

(5) plaintiff's damages resulting from reliance on the statement.

*Linhart v. Bridgeview Creek Development, Inc.,* 391 Ill.App.3d 630, 634, 330 Ill.Dec. 843, 909 N.E.2d 865 (Ill.App. 1st Dist.2009) (citing *Connick v. Suzuki Motor Co.,* 174 Ill.2d 482, 496, 221 Ill.Dec. 389, 675 N.E.2d 584 (1996)). Similarly, under New York law, the elements of a fraud claim are:

(1) a material misrepresentation or omission of fact

(2) made by defendant with knowledge of its falsity

(3) and intent to defraud;

(4) reasonable reliance on the part of the plaintiff; and

(5) resulting damage to the plaintiff.

*Crigger v. Fahnestock and Co., Inc.,* 443 F.3d 230, 234 (2d Cir.2006).

Here, the Pratt Estate fails to state a cause of action for fraud because it does not allege that either MetLife or the Zeid-

man Trust made any statements to Sherry Pratt, let alone false statements on which Sherry Pratt relied. In fact, the Pratt Estate does not allege that *any* person made any statement to Sherry Pratt relevant to this case. Rather, the Pratt Estate alleges only that Debra Flowers— whose alleged role as agent for either MetLife or the Zeidman Trust is dubious— made false statements to Sherry Pratt's aunt, Sharon Pratt. However, the Pratt Estate does not allege that Sharon Pratt communicated these statements to Sherry Pratt, or that Sharon Pratt had any power of agency to act on Sherry Pratt's behalf. Thus, the Pratt Estate cannot satisfy the element of a fraud claim that requires Sherry Pratt to have relied on a false statement made by MetLife or the Zeidman Trust.

■ In addition, the Pratt Estate has alleged no facts showing damage to Sherry Pratt or her estate. Sherry Pratt is not alleged to have lost any money or to have been otherwise emotionally harmed as a result of the alleged illicit use of her identity. To the extent that the Pratt Estate alleges harm in conclusory terms, (see PAC, ¶ 127) this is insufficient to state a claim for relief. For this additional reason, the Pratt Estate's fraud claim is futile.

■ The Pratt Estate's claim for conspiracy to commit fraud fails for similar reasons. Under both Illinois and New York law, a conspiracy to commit fraud requires that a party, among other things, agree to commit fraud and then take an overt step in furtherance of that fraud. *See, e.g., Linhart v. Bridgeview Creek Development, Inc.,* 391 Ill.App.3d 630, 634, 330 Ill.Dec. 843, 909 N.E.2d 865 (Ill.App. 1st Dist.2009); *Best Cellars Inc. v. Grape Finds at Dupont, Inc.,* 90 F.Supp.2d 431, 446 (S.D.N.Y.2000). Here, the Pratt Estate alleges no facts showing either an agreement to defraud or any overt acts in furtherance of this by either MetLife or the Zeidman Trust. Moreover, the Pratt Estate alleges no damages resulting from the alleged conspiracy. Therefore, the Pratt Estate's claim for conspiracy to commit fraud is also futile.

### c. Unjust Enrichment

■ Finally, the Pratt Estate seeks to assert a claim for unjust enrichment against MetLife and the Zeidman Trust. Again, no party addresses the issue of choice of law with regard to this claim, but both MetLife and the Zeidman Trust rely on Illinois law in their challenge to the Pratt Estate's unjust enrichment cause of action. For its part, the Pratt Estate offers no discussion whatsoever of its unjust enrichment claim, let alone any discussion of the appropriate choice of law.

■ The Court views the application of Illinois law as reasonable, and finds that the Pratt Estate's claim for unjust enrichment would be futile. First, as discussed above, the Pratt Estate has stated no damages arising from the alleged misconduct of MetLife and the Zeidman Trust. Second, under Illinois law, unjust enrichment is not "a separate cause of action that, standing alone, would justify an action for recovery." *Mulligan v. QVC, Inc.,* 382 Ill.App.3d 620, 631, 321 Ill.Dec. 257, 888 N.E.2d 1190 (Ill.App. 1st Dist. 2008). Thus, in cases where an underlying fraud claim is without merit, an unjust enrichment claim generally fails as well. *See id.* ("where the underlying claim for fraud is deficient, we have dismissed claims for unjust enrichment"). Finally, the Pratt Estate's failure to address the arguments for futility advanced by MetLife and the Zeidman Trust operates as a constructive abandonment of this cause of action. *See, e.g., Lipton v. County of Orange, NY,* 315 F.Supp.2d 434, 446 (S.D.N.Y.2004) ("This Court may, and gen-

erally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."). The Court therefore finds that the Pratt Estate's cause of action for unjust enrichment is also futile.

Having found· all of the claims asserted in the PAC to be futile, the Court finds that amendment of the Pratt Estate's counterclaim and cross-claim is inappropriate. The Pratt Estate's motion to amend is therefore denied in its entirety.

## B. MetLife's Motion to Dismiss and for Discharge

MetLife separately moves to dismiss the Pratt Estate's presently pending counterclaim against it for violation of the Illinois Right of Publicity Act, and also seeks to be dismissed from this interpleader action and discharged of liability. The Pratt Estate opposes both of these requests. The Zeidman Trust has taken no position on either request.

### 1. MetLife's Motion to Dismiss the Pratt Estate's Counterclaim

In its original complaint, the Pratt Estate asserted a counterclaim against Met-Life under the IRPA. This original counterclaim is materially identical to the PAC's IRPA claim, except that it is based on less alleged factual detail than is contained in the PAC. The Court has already found that the IRPA claim against Met-Life asserted in the PAC is deficient, and the Court therefore now finds that the IRPA claim asserted against MetLife in the present complaint is also invalid, and dismisses that claim. To the extent that the Pratt Estate claims to have also asserted a common law cause of action against MetLife for violation of the right of publicity, that cause of action also must fail, as it is preempted by the IRPA.

*Blair*, 369 Ill.App.3d at 322–23, 307 Ill.Dec. 511, 859 N.E.2d 1188.

### 2. MetLife's Motion for Discharge

■ In addition, MetLife asserts that it has satisfied the jurisdictional requirements for an interpleader case, and it now seeks to be dismissed from the action and to be absolved of any liability in connection with the interpleaded funds.

■ Generally, once an interpleader plaintiff has satisfied the jurisdictional requirements of an interpleader claim, the Court will discharge the plaintiff from liability and dismiss it from the case. *See New York Life Ins. Co. v. Connecticut Development Authority*, 700 F.2d 91, 95 (2d Cir.1983); *Locals 40, 361 & 417 Pension Fund*, 2007 WL 80868 at *3. To determine the jurisdictional elements of an interpleader claim, federal district courts look to 28 U.S.C. § 1335. Under this statute, a plaintiff that commences an interpleader action must first allege that it is in possession of a single fund of value greater than $500. *Bankers Trust Co. v. Manufacturers Nat. Bank of Detroit*, 139 F.R.D. 302 (S.D.N.Y.1991) (citing to *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967)). Second, the plaintiff must allege "a real and reasonable fear of double liability or vexatious, conflicting claims" *Washington Electric Coop., Inc.*, 985 F.2d at 679, against the single fund, "regardless of the merits of the competing claims." *Fidelity Brokerage Servs., LLC v. Bank of China*, 192 F.Supp.2d 173, 177 (S.D.N.Y.2002); *see also Locals 40, 361 & 417 Pension Fund v. McInerney*, No. 06–cv–5224 (JFK), 2007 WL 80868, *3 (S.D.N.Y. Jan. 9, 2007). Finally, pursuant to the plain language of Section 1335, a plaintiff must state that it has deposited or is depositing the fund with the court.

Here, the plaintiff MetLife has alleged that it is in possession of a fund of $975,000, for which it has received competing claims from the Zeidman Trust and the Pratt Estate. Having deposited this fund with the Court, MetLife is now entitled to be dismissed from the case, and to be absolved of liability in connection with the interpleaded funds. The Court therefore grants MetLife's motion for discharge, and dismisses MetLife from this case.

## C. The Zeidman Trust's Motion to Dismiss the Cross–Claim and for Judgment on the Pleadings

The Zeidman Trust also moves to dismiss the Pratt Estate's cross-claim based on a violation of the Illinois Right of Publicity Act, and in addition moves for a judgment on the pleadings granting it the interpleaded funds. The Pratt Estate opposes both of these requests. MetLife take no position on either request.

### 1. The Zeidman Trust's Motion to Dismiss the Pratt Estate's Cross–Claim

As with MetLife, the Pratt Estate had asserted a claim for violation of the IRPA against the Zeidman Trust prior to seeking to amend its complaint. Also, as with MetLife, this previously asserted IRPA claim was materially identical to the claim asserted in the PAC, except for a lack of certain additional alleged facts included in the PAC. Thus, having found that the Pratt Estate did not state a valid IRPA claim against the Zeidman Trust in the PAC, the Court also finds that the IRPA claim against the Zeidman Trust in the present complaint is without merit. The Court therefore dismisses the Pratt Estate's cross-claim against the Zeidman Trust based on violations of the IRPA. Any common law claim based on the right of publicity is similarly dismissed. *See*

discussion, supra.; *Blair,* 369 Ill.App.3d at 322–23, 307 Ill.Dec. 511, 859 N.E.2d 1188.

### 2. The Zeidman Trust's Motion for Judgment on the Pleadings

Finally, the Zeidman Trust requests that, based solely on the pleadings before the Court, the Court award it the interpleaded funds. The Zeidman Trust asserts that it is entitled to these funds as the legal consequence of MetLife's rescission of the Annuity, and that the Pratt Estate has stated no valid claim to the interpleaded funds. The Court agrees.

It is the Court's role in an interpleader case to determine which of the named defendants is entitled to all or part of the interpleaded funds. The Court now evaluates this based on the parties' pleadings, taking the facts alleged by the non-moving party, the Pratt Estate, as true.

With respect to the Pratt Estate's claim to the interpleaded funds, the Court has already ruled that the Pratt Estate's sole basis for claiming the interpleaded funds, that the Zeidman Trust violated of the IRPA, is not legally valid. Thus, the Court does not award the Pratt Estate any of the interpleaded funds.

By contrast, the Zeidman Trust originally paid the interpleaded funds to MetLife as consideration for the Annuity. MetLife has now rescinded the Annuity contract, and the ordinary result of the rescission of a contract is that each party return the other to its pre-contract condition. *See, e.g., Black's Law Dictionary* 1421 (9th ed. 2009) (rescission generally "restore[s] the parties to their precontractual positions"). In this case, that would include MetLife's return of the interpleaded funds to the Zeidman Trust. As MetLife, the rescinding party, has no objection to this result, there are no disputed issues of fact or law that prevent the Court from effecting that result. Therefore, the Court directs that

the interpleaded funds should be returned to the Zeidman Trust, from whence they originally came. The Zeidman Trust's motion for a judgment on the pleadings awarding them the interpleaded funds is therefore granted. The Pratt Estate's motion to lift the stay of discovery is rendered moot.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Pratt Estate's motion to join the third party defendants and to amend its cross-claim and counterclaim is denied in its entirety; and it is further

**ORDERED** that MetLife's motion to dismiss the Pratt Estate's counterclaim, to be discharged from liability in connection with the interpleaded funds, and to be dismissed from this case is granted in its entirety; and it is further

**ORDERED** that the Zeidman Trust's motion to dismiss the Pratt Estate's cross-claim and for judgment on the pleadings is granted in its entirety and the cross-claim by the Pratt Estate against the Zeidman Trust is dismissed; and it is further

**ORDERED** that the Pratt Estate's motion to lift the stay of discovery is denied as moot; and it is further

**ORDERED** that the Clerk of the Court is directed to transfer the interpleaded funds in this case, in the sum of $975,000, plus accrued interest, to the Zeidman Trust; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**