No. 2--06--0328                                    filed: 12/8/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JOHN BLAIR, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 04--L--459 |
| | ) | |
| NEVADA LANDING PARTNERSHIP, | ) | |
| RBG, LP, and ELGIN RIVERBOAT | ) | |
| RESORT, d/b/a Grand Victoria Casino, | ) | Honorable |
| | ) | Donald J. Fabian, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The plaintiff, John Blair, filed a cause of action in the circuit court of Kane County against the defendants, Nevada Landing Partnership and Elgin Riverboat Resort, d/b/a Grand Victoria Casino, alleging a common-law claim of appropriation of likeness and a violation of the Illinois Right of Publicity Act (765 ILCS 1075/1 et seq. (West 2002)). The plaintiff appeals from the February 28, 2006, order of the trial court granting summary judgment to the defendants, determining that his cause of action was time barred. We affirm.

I. BACKGROUND

As revealed in the pleadings, exhibits, and affidavits of record, on September 9, 1994, the plaintiff began working for the defendants as a food and beverage supervisor of the Buckingham Steakhouse, a restaurant owned and operated by the defendants. Six months later, the plaintiff became the restaurant manager of the Buckingham Steakhouse. In October 1998, the plaintiff

became a senior executive host for the defendants' casino. The plaintiff remained in that position until October 1999, when he voluntarily resigned his employment with the defendants.

In October 1994, approximately one month after the commencement of the plaintiff's employment with the defendants, the plaintiff and two other employees, Georgi Booras and Mark Kubiak, were asked to participate in a photo shoot. Booras was a food and beverage supervisor at the Buckingham Steakhouse and Kubiak was a waiter at the restaurant. The photo shoot took place at the Buckingham Steakhouse on a work day. It began at 6 a.m. and lasted several hours. The employees, including the plaintiff, were paid for their time. The photographer, Paul Schlissman, took several photographs of the plaintiff and Booras pretending to dine on various fine foods, with Kubiak as their waiter. According to the plaintiff's deposition, the plaintiff was not advised of how the pictures were going to be used. However, according to Booras' affidavit, Booras was informed that the defendants intended to use the photographs for promotional purposes. Furthermore, during the photo shoot, Booras discussed with the plaintiff the fact that the photographs were going to be used for promotional purposes. Furthermore, "the plaintiff did not have any problems with participating in the shoot."

The defendants selected a single photo from the shoot and used it in numerous materials promoting the Buckingham Steakhouse. In 1995, about six months after the photo shoot, the selected photo appeared on various flyers and brochures, signs and billboards, casino restaurant menus, and calendars and postcards for sale in the casino gift shop. In 1997, the selected picture appeared in a new brochure entitled "The Buckingham Experience," which was created while the plaintiff was manager of the restaurant. Finally, the selected picture appeared on the defendants' website, although it is unclear when the photograph first appeared on the website. The plaintiff noticed the photo, which appeared in the casino pavilion, the VIP lounge, various restaurants, and

the gift shop, just about every day that he worked. In particular, the seven-foot-tall and five-foot-wide billboard displaying the photo in the pavilion of the casino was "impossible to miss." Furthermore, many customers brought to the plaintiff's attention the fact that his picture appeared on the billboard. The plaintiff testified in his deposition that he did not mind at that time that his photograph was being used.

According to the plaintiff's deposition, in 1999, before the plaintiff resigned his employment with the defendants, the plaintiff complained to Betsy Modglin, one of his supervisors, about the use of his picture. However, the defendants have no record of the plaintiff ever having made such a complaint. Also according to the plaintiff's deposition, in 2000, after the plaintiff had left the employ of the defendants, the plaintiff telephoned Sharon McGill in the defendants' human resources department and complained that his picture was still in use. The defendants continued to display the plaintiff's image. According to McGill's affidavit, however, the plaintiff never contacted her until January 2004.

On January 13, 2004, the plaintiff telephoned McGill, now the human resources director for the defendants, and requested that the defendants cease use of his image. After receiving this call, McGill contacted the defendants' marketing manager and directed her to remove the plaintiff's picture from all promotional materials. McGill also contacted the defendants' website administrator and one of the defendants' food and beverage supervisors and instructed them to discontinue use of the plaintiff's picture. On January 14, 2004, McGill called the plaintiff back and informed him that his picture was no longer in use. Since then, as far as the plaintiff is aware, the defendants have not used his picture.

On September 20, 2004, the plaintiff filed a one-count complaint against the defendants, alleging a common-law claim of appropriation of likeness. Nearly a year later, on July 14, 2005,

the plaintiff filed an amended complaint adding a second count alleging a violation of the Right of Publicity Act (765 ILCS 1075/1 et seq. (West 2002)). On November 23, 2005, the defendants filed a motion for summary judgment, arguing that (1) the plaintiff's complaint was barred by the statute of limitations; (2) the plaintiff's complaint was barred by laches, estoppel, or waiver; (3) the plaintiff consented to the use of the photograph; and (4) the plaintiff's likeness had no intrinsic commercial value.

On February 28, 2006, the trial court granted the defendants' motion for summary judgment, finding that the plaintiff's action was barred by the statute of limitations. The trial court first explained that count I, the plaintiff's common-law claim of appropriation of likeness, was untimely because it was filed more than five years after the common-law tort had ceased to exist. On January 1, 1999, the common-law tort of appropriation of likeness was supplanted by the statutory cause of action set forth in the Right of Publicity Act, which carries a statute of limitations of one year after the accrual of the cause of action.

The trial court then explained that count II, the statutory claim of appropriation of likeness filed on July 14, 2005, was also untimely in that it was filed more than one year after the accrual of the cause of action, the date of accrual being January 14, 2004, the last known date of publication of the plaintiff's likeness. In so ruling, the trial court noted that the relation-back doctrine (see 735 ILCS 5/2--616(d) (West 2004)) did not apply in this case because, as the first complaint was time barred, the second complaint could not relate back to the first. The plaintiff thereafter filed a timely notice of appeal.

## II. DISCUSSION

The plaintiff's primary contention on appeal is that the trial court erred in granting the defendants' motion for summary judgment. The use of the summary judgment procedure is to be

encouraged as an aid in the expeditious disposition of a lawsuit. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 43 (2004). However, summary judgment is a drastic measure and should be granted only if the movant's right to judgment is clear and free from doubt. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102 (1992). Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2--1005(c) (West 2004). When ruling on a motion for summary judgment, the trial court should consider the pleadings, depositions, admissions on file, and affidavits in the light most favorable to the nonmoving party. Dowd & Dowd, Ltd. v. Gleason, 181 Ill. 2d 460, 483 (1998). Where a reasonable person could draw divergent inferences from the undisputed facts, summary judgment should be denied. Pyne v. Witmer, 129 Ill. 2d 351, 358 (1989). The standard of review of an order granting summary judgment is de novo. Dowd & Dowd, Ltd., 181 Ill. 2d at 483.

With these principles in mind, we examine the plaintiff's two claims: count I, the common-law claim of appropriation of one's likeness, and count II, the statutory claim of appropriation of one's likeness. Historically, there are four common-law invasion of privacy torts, those being (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) a public disclosure of private facts; and (4) publicity that reasonably places another in a false light before the public. Ainsworth v. Century Supply Co., 295 Ill. App. 3d 644, 648 (1998). The tort of appropriation of one's likeness is sometimes referred to as "the right of publicity." See Pesina v. Midway Manufacturing Co., 948 F. Supp. 40, 42 (N.D. Ill. 1996).

To allege a common-law appropriation-of-likeness or right-of-publicity claim, one must set forth three elements: an appropriation of one's name or likeness, without one's consent, for another's

commercial benefit.  <u>Leopold v. Levin</u>, 45 Ill. 2d 434, 444 (1970); <u>Dwyer v. American Express Co.</u>, 273 Ill. App. 3d 742, 748 (1995).  The statute of limitations on an appropriation-of-likeness claim is one year next from the date the cause of action accrued.  See 735 ILCS 5/13--201 (West 2002) ("Actions for slander, libel, or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued"); see also <u>Benitez v. KFC National Management Co.</u>, 305 Ill. App. 3d 1027, 1033 (1999).

After December 31, 1998, the common-law tort of appropriation of one's likeness ceased to exist.  The Right of Publicity Act, effective January 1, 1999, completely replaced the common-law tort of appropriation of likeness, although it did not affect the other three common-law privacy torts. See 765 ILCS 1075/60 (West 2002).  Specifically, the Right of Publicity Act sets forth:

> "The rights and remedies provided for in this Act are meant to supplant those available under the common law as of the effective date of this Act, but do not affect an individual's common law rights as they existed before the effective date of this Act.  Except for the common law right of publicity, the rights and remedies provided under this Act are supplemental to any other rights and remedies provided by law including, but not limited to, the right of privacy."  765 ILCS 1075/60 (West 2002).

To allege a statutory claim of appropriation of likeness under the Right of Publicity Act, one must set forth essentially the same three elements that were required for a common-law claim of appropriation of likeness. 765 ILCS 1075/30 (West 2002). Section 30 of the Right of Publicity Act provides, "A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons." 765 ILCS 1075/30 (West 2002).  The Right of Publicity Act does not identify a specific statute of limitations.  However, since the Right of Publicity Act completely supplanted the

common-law tort of appropriation of likeness (765 ILCS 1075/60 (West 2002)), we find applicable the one-year statute of limitations that pertained to the common-law tort.

Before determining whether the plaintiff's claims were filed outside the one-year statute of limitations and thus time barred, we must determine the date of accrual of his cause of action. Generally, in tort, a cause of action accrues and the limitations period begins to run when facts exist that authorize one party to maintain an action against another. Feltmeier v. Feltmeier, 207 Ill. 2d 263, 278 (2003); Fetzer v. Wood, 211 Ill. App. 3d 70, 78 (1991). Indeed, a plaintiff's cause of action in tort usually accrues at the time his or her interest is invaded, which in this case would be when the objectionable material was first published. Bank of Ravenswood v. City of Chicago, 307 Ill. App. 3d 161, 167 (1999).

That said, we note that an exception to the general rule exists when the tort at issue involves a continuing or repeated injury. See Feltmeier, 207 Ill. 2d at 278; Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325, 345 (2002). Under the "continuing violation rule," where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease. Feltmeier, 207 Ill. 2d at 278; Belleville Toyota, 199 Ill. 2d at 345. A continuing violation is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation. Feltmeier, 207 Ill. 2d at 278. However, where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury. Feltmeier, 207 Ill. 2d at 279.

We do not believe that the defendants' act of publishing the plaintiff's picture in various mediums around the casino falls under the continuing violation exception. Rather, we believe that the use of the plaintiff's picture in different means such as on the billboard in the casino pavilion,

in the casino's restaurant menu, and on the defendants' website, constituted a single overt act. The plaintiff's picture, although it was displayed via several mediums over a period of time, was used for a single purpose, to advertise the Buckingham Steakhouse, and targeted a single audience, casino patrons. The fact that a single photo of the plaintiff appeared via several mediums between 1995 and 2004 evidences a continual effect that is relevant to damages, but does not denote a continuing course of conduct for which the limitations period can be tolled. As noted above, a continuing violation is occasioned by continuing unlawful acts and conduct, not continual ill effects from an initial violation. Feltmeier, 207 Ill. 2d at 278. In the present case, the plaintiff alleges one overt act with continual effects. To hold otherwise would cause an attendant problem of an endless tolling of the statute of limitations and could produce a vast multiplicity of suits. Indeed, the purpose of a statute of limitations is to discourage the presentation of stale claims and to encourage diligence in the bringing of action. Sundance Homes, Inc. v. County of DuPage, 195 Ill. 2d 257, 265-66 (2001). Statutes of limitations represent society's recognition that predictability and finality are desirable, indeed indispensable, elements of the orderly administration of justice that must be balanced against the right of every citizen to seek redress for a legally recognized wrong. Sundance Homes, 195 Ill. 2d at 266. As such, we apply in this case the general rule whereby a cause of action accrues at the time a party's interest is invaded. See Ravenswood, 307 Ill. App. 3d at 167.

Our determination is consistent with the Uniform Single Publication Act (740 ILCS 165/1 (West 2002)), which provides that "[n]o person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance." Pursuant to this rule, defamation and privacy actions are "complete at the time of the first publication, and any subsequent appearances or distributions of copies of the original publication are of no consequence to the creation or existence of a cause of

action, but are only relevant in computing damages." (Emphasis added.) Founding Church of Scientology of Washington, D. C. v. American Medical Ass'n, 60 Ill. App. 3d 586, 588 (1978). The subsequent distribution of existing copies of an original publication neither creates a new cause of action nor tolls the applicable statute of limitations. Founding Church of Scientology, 60 Ill. App. 3d at 589.

As persuasively explained by the United States District Court for the Southern District of New York, the single-publication rule, as applied to appropriation-of-likeness claims, requires that "only one [right of publicity] action is recognized, even where a publication is distributed numerous times over an extended period." Zoll v. Jordache Entertainment, Inc., No. 01 Civ. 1339, slip op. at ___ (S.D.N.Y. Dec. 24, 2002) (unpublished opinion), citing Gregoire v. G.P. Putnam's Sons, 298 N.Y. 119, 81 N.E. 2D 45 (1948). "Thus, the first time that an offending item is published, the one-year statute of limitations *** begins to run and the dissemination of that same offending item thereafter does not give rise to a new cause of action, nor does it refresh the running of the statute of limitations." Zoll, slip op. at ___.

However, a republication of the plaintiff's likeness can constitute a new cause of action if the publication is altered so as to reach a new audience or promote a different product. Lehman v. Discovery Communications, Inc., 332 F. Supp. 2d 534, 539 (E.D.N.Y. 2004); Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GmbH & Co., 150 F. Supp. 2d 566, 573 (S.D. N.Y. 2001). For example, in Lehman, an orthopaedic surgeon brought a defamation action against Discovery Communications, alleging that it aired on its Learning Channel network a program entitled "World's Most Outstanding Undercover Stings." Lehman, 332 F. Supp. 2d at 535. The program, which appeared on 17 occasions from March 21, 1999, to May 24, 2001, detailed the surgeon's arrest for insurance fraud. Lehman, 332 F. Supp. 2d at 536. However, before the program

first aired on March 21, 1999, the plaintiff had been acquitted of the charges against him. Lehman, 332 F. Supp. 2d at 535. The defendant brought a motion for summary judgment, alleging that the plaintiff's action, which was commenced on June 21, 2001, was untimely in that it was filed more than a year after the accrual of the cause of action. Lehman, 332 F. Supp. 2d at 538. The Lehman court denied the motion, reasoning that, because the rebroadcasts obviously were intended to reach different audiences, each rebroadcast of the television program was a republication that retriggered the statute of limitations. Lehman, 332 F. Supp. 2d at 539.

In the present case, we do not believe that there were any republications that would constitute a new cause of action and retrigger the statute of limitations. As previously explained, between 1995 and 2004, the plaintiff's picture was used to promote a single product, the Buckingham Steakhouse. Furthermore, during that time, the plaintiff's image remained constant and was not significantly altered to reach a new audience. A single photograph was used from the photo shoot. Although the selected photograph was displayed via several mediums, such as billboards, brochures, flyers, menus, calendars, and postcards, it was displayed predominantly within the casino and to existing casino customers. We note that the selected photograph also appeared on the casino website. However, the purpose of the use of the photograph on the website was the same as the purpose of its use in the other mediums around the casino: to attract casino customers to dine at the Buckingham Steakhouse. We therefore determine that the plaintiff's cause of action accrued, and the statute of limitations began to run on that action, in 1995, approximately six months after the October 1994 photo shoot.

The plaintiff argues that we should apply the discovery rule instead of a literal application of the statute of limitations. Because the mechanical application of a statute of limitations could bar a plaintiff from bringing suit before the plaintiff was even aware that he or she was injured, the

"discovery rule" was created. Golla v. General Motors Corp., 167 Ill. 2d 353, 360 (1995). The effect of the discovery rule is to postpone the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused. Golla, 167 Ill. 2d at 360. Other jurisdictions adopting the uniform single-publication rule or a variation thereof have found that the single-publication rule is inherently at odds with and would undermine the discovery rule. See, e.g., Shively v. Bozanich, 31 Cal. 4th 1230, ____, 80 P.3d 676, ___, 7 Cal. Rptr. 3d 576, ___ (2003); Mullin v. Washington Free Weekly Inc., 785 A.2d 296, 299 (D.C. 2001); Holloway v. Butler, 662 S.W.2d 688 (Texas App. 1983). Under the single-publication rule, generally the cause of action accrues and the period of limitations commences regardless of when the plaintiff secured a copy or became aware of the publication. Long v. Walt Disney Co., 116 Cal. App. 4th 868, 872, 10 Cal. Rptr. 3d 836, 839 (2004). Indeed, the discovery rule is inapplicable in light of the single-publication rule unless the publication was hidden, inherently undiscoverable, or inherently unknowable. Long, 116 Cal. App. 4th at 872, 10 Cal. Rptr. 3d at 839. We agree that the application of the discovery rule undermines the single-publication rule, especially here, where the publication was unhidden, easily discovered, and delivered to a mass sector of the public.

Having determined that the plaintiff's cause of action accrued in 1995 when his image was first published, we now address whether the plaintiff's cause of action was timely filed. On September 20, 2004, the plaintiff initiated his cause of action alleging a single common-law claim of appropriation of likeness. On July 14, 2005, the plaintiff filed an amended complaint alleging a common-law appropriation-of-likeness claim and a statutory appropriation-of-likeness claim pursuant to the Right of Publicity Act. Neither complaint stated a timely cause of action. Both complaints were based on the same set of operative facts, namely, the defendants' alleged use of the

plaintiff's image on various promotional materials advertising the Buckingham Steakhouse without the plaintiff's consent. When the plaintiff's cause of action accrued in 1995, the only claim that the plaintiff could have brought was the common-law claim of appropriation of likeness, as the statutory claim did not yet exist. The statute of limitations for such a claim was one year and expired in 1996. The plaintiff's claim brought in 2004 and then amended in 2005 was well beyond the one-year statute of limitations and, thus, was untimely.

We note, however, that the plaintiff maintains that he revoked his consent in 1999 when he complained to his supervisor Betsy Modglin about the continued use of his photo. The plaintiff further maintains that an additional cause of action should have arisen in 1999 when he revoked his consent. Depending upon the facts and circumstances, an employee's consent to the use of his or her identity by the employer may be either expressly revoked by the employee or automatically revoked upon termination of the employment relationship. 62A Am. Jur. 2d Privacy §229 (2005). On the other hand, where the employer has incurred expenses in reliance upon the consent, the consent may be irrevocable, despite the employee's attempts to retract it. 62A Am. Jur. 2d Privacy §229 (2005). We need not determine in this case whether the plaintiff was entitled to revoke his consent or whether the plaintiff successfully did so. Even if the plaintiff revoked his consent in 1999, the plaintiff's cause of action was still untimely. Had a cause of action accrued in 1999, the only claim that the plaintiff could have brought based on the revocation was the statutory claim, as the common-law claim had then been supplanted by the statutory cause of action. See 765 ILCS 1075/60 (West 2002). The one-year statute of limitations on the Right of Publicity Act claim would have expired in 2000. The plaintiff's amended claim filed on July 14, 2005, even if it could relate back to the original claim filed on September 20, 2004, was filed well outside of that time.

### III. CONCLUSION

In summary, the trial court did not err in granting the defendants' motion for summary judgment as to both the common-law and the statutory appropriation-of-likeness claims. The plaintiff's cause of action based on the first publication of his image expired in 1996 and his cause of action based on the revocation of his consent expired in 2000.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

GROMETER, P.J., and McLAREN, J., concur.