In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3233

GEORGE KIEBALA,

*Plaintiff-Appellant,*

*v.*

DEREK BORIS,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-CV-7478 — **Marvin E. Aspen**, *Judge*.

ARGUED SEPTEMBER 5, 2018 — DECIDED JULY 1, 2019

Before EASTERBROOK, HAMILTON, and SCUDDER, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiff-appellant George Kiebala appeals from the dismissal of his complaint against defendant-appellee Derek Boris. Kiebala contends the district court abused its discretion in failing to suggest how Kiebala, who represented himself in the district court, could amend his complaint to avoid dismissal. He also argues that the district

court erred in holding that his libel claim is barred by the statute of limitations.

We affirm. District judges do not have an affirmative duty to coach or second-guess the choices that parties, even *pro se* parties, make about how to litigate their cases. We also agree with the district court that the applicable Illinois statute of limitations bars Kiebala's libel claim.

I.   *Factual and Procedural Background*

A.  *The Dispute*

In reviewing a dismissal for failure to state a claim, we accept the facts as alleged by the plaintiff without vouching for their objective truth. *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018). Kiebala owns a luxury car share service called Curvy Road Holdings, LLC.[1] It allows customers to purchase time-ownership rights to high-end automobiles that are owned by "investors." In September 2009, Derek Boris became a Curvy Road "investor" and received a share of the rental revenue when customers drove his Lamborghini Gallardo. All was well for the first few months as Kiebala made payments to Boris in late 2009 and March 2010.

In May 2010, however, Boris withdrew his car from the program, and Kiebala's check for his final payment to Boris did not clear. Kiebala emailed Boris on July 16, 20, 22, and August 6, 2010, to explain that various medical and business difficulties were preventing payment. Boris never received his

---

[1] Kiebala also owns a second company, Exotic Car Share, LLC, which operates on a different business model. Although the filings mention both companies, defendant Boris contracted only with Curvy Road Holdings. For ease of reference, we limit our discussion to Curvy Road.

final payment, and communications between the two seemed to come to an end.

After a period of quiet, though, Boris posted angry and derogatory statements on various websites about Kiebala and Curvy Road. He did this on at least eight occasions from December 2010 through July 2011. Sharing his thoughts on customer review sites such as Scamexposure.com, Private-complaints.com, and Ripoffreport.com, Boris allegedly revealed (we must assume) Curvy Road's confidential business information and opined that "it is a FRAUD company" whose "owner simply cannot be trusted [because] [h]e has lied repeatedly and he will steal your money."

Kiebala's final posting from this period, central to the statute of limitations issue here, was made to RipoffReport.com on July 20, 2011. The subject heading asserted that Kiebala was a "SCAM and FRAUD!" and "Stole Money!" The message said:

> The company rents some of its exotic cars from individual owners such as myself, and pays out a commission based off of actual customer use. However, their excuse for not paying THOUSANDS of owed commissions to me is that "my wife took my money"! This from a supposed 'professional' company, makes it clear that lying and stealing are part of George Kiebala [and] Curvy Road['s] … daily management! I would advise EVERYONE, customers and potential partners, to STAY AWAY from this thief, or you risk losing everything. This

company, and the owners, simply cannot be trusted!![2]

And with that, the dispute went dormant for several years.

In the fall of 2014, Boris again turned his sights on Kiebala. On October 22, 2014, Boris emailed Kiebala that he wanted to give him "a chance to make good on our agreement before I put my review of your company on various websites." The parties did not reach a settlement agreement, and Boris launched a new round of internet postings.

On July 21, 2015, on a new website called scamorg.com, Boris posted a statement almost identical to his RipoffReport post of July 20, 2011. And on July 22, 2015, Boris returned to RipoffReport.com and "updated" his original July 20, 2011 post. According to Kiebala, "No additional information appears to have been provided when the post was updated." Kiebala claims, and we assume for purposes of the appeal, that by indicating that his 2011 negative review was "updated," Boris caused the post to reflect a date of 2015, making it more likely to be prioritized in new online search results.

B. *The Litigation*

Kiebala, representing himself, sued Boris the following year on July 22, 2016, alleging five Illinois state law claims. (The district court had jurisdiction under 28 U.S.C. § 1332(a) based on diversity of citizenship.) Boris moved to dismiss the complaint. The district court granted the motion and

---

[2] Kiebala submitted a print-out of this post to the district court and identified its date as July 20, 2011. Kiebala's submission, however, is a July 20, 2011 post that is designated "Updated" as of July 22, 2015. Kiebala says that the text of the original 2011 post was not changed when it was later "updated" in 2015, and we assume as much for purposes of this appeal.

dismissed all counts, noting that: (a) the dismissal as to the libel and intentional inflection of emotional distress claims was without prejudice, and (b) the dismissal of claims for breach of a non-disclosure agreement, breach of contract, and tortious interference with business expectancy was without prejudice because Kiebala sued in his personal capacity and he was not the real party in interest—his companies were. *Kiebala v. Boris*, No. 1:16 cv 7478, 2017 WL 590287 (N.D. Ill. Feb. 14, 2017). As for the latter three claims, the court gave Kiebala thirty days to file an amended complaint that either joined or substituted his companies as plaintiffs; if he failed to do so, the latter three claims would be dismissed with prejudice. *Id.* at *7.

Kiebala's claims for libel and intentional infliction of emotional distress faced different hurdles. The district court held that Kiebala's libel claim was barred by Illinois's one-year statute of limitations for defamation claims because the last "original post" was dated July 21, 2015, i.e., one day outside the limitations period. *Id.* at *4. The court concluded that Boris's "updated" post from July 22, 2015 could not extend the limitations period. *Id.*

The district court dismissed Kiebala's claim for intentional infliction of emotional distress on the merits, holding that the posts could not be considered objectively as "so extreme as to go beyond all possible bounds of decency," but were better categorized as "[m]ere insults, indignities, threats, annoyances, petty oppressions or other trivialities." *Id.* at *6, quoting *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 211 (Ill. 1992). Thus, the district court granted Boris's motion to dismiss because, "even construing his complaint liberally given

his pro se status," Kiebala's complaint failed to state a claim upon which relief could be granted. *Id.* at *7.

Kiebala filed a motion asking the court to reconsider its ruling on the claims for tortious interference and intentional infliction of emotional distress, and to grant him leave to file an amended complaint. Kiebala made clear that he was not asking the district court to reconsider its ruling on his libel claim or to allow him to amend that claim. His motion, supporting memorandum, and reply memorandum were all consistent on that score. His only references to his libel claim emphasized that he was *not* asking the district court to reconsider its ruling on that claim, nor requesting leave to amend.

The district court denied the motion for reconsideration but made clear that its dismissal was without prejudice and that Kiebala could file an amended complaint. *Kiebala v. Boris*, No. 1:16 cv 7478, 2017 WL 1161177, at *3 (N.D. Ill. Mar. 29, 2017). Kiebala did so, but Boris again moved to dismiss, this time seeking sanctions. In opposing the motions, Kiebala again emphasized that he was not trying to amend his libel claim.

As relevant to Kiebala's appeal, the new allegations intended to buttress the claim for intentional infliction of emotional distress included several additional instances of allegedly defamatory posts. Most of these posts still dated from 2011, but some were undated, and one was arguably posted on March 20, 2017, and we accept that date on appeal. The newly alleged posts largely tracked the other posts in form, tone, and substance.

The district court denied Boris's motion for sanctions but granted dismissal, this time with prejudice. *Kiebala v. Boris*,

No. 1:16 cv 7478, 2017 WL 4339947, at *1 (N.D. Ill. Sept. 29, 2017). The court held that Kiebala's attempts to cure the tortious interference claim were insufficient on the merits. *Id.* at *3–4. The court further held that Kiebala's amended claim for intentional infliction of emotional distress also failed on the pleadings. *Id.* at *5–6. Even considering the newly alleged post, the alleged conduct did not satisfy the high standard for such a claim: "beyond all possible bounds of decency" and "intolerable in a civilized community." *Id.* at *6, quoting *Swearnigen-El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010). The district court entered judgment for Boris.

II. *Analysis*

On appeal, Kiebala presents two questions about only his libel claim. First, he contends that the district court erred by not allowing him to amend his libel claim. Second, he argues that the court erred by finding that the statute of limitations bars the claim.

A. *Opportunity to Amend Pleadings*

When a district court denies a party's request to amend his pleadings, we review under an abuse of discretion standard, and there is "a presumption in favor of giving plaintiffs at least one opportunity to amend." *Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 524, 518 (7th Cir. 2015). Kiebala, however, never sought to amend his libel claim. Instead, he faults the district court for failing to "offer" him an opportunity to amend the libel claim. This approach is not grounded in the text of Federal Rule of Civil Procedure 15, which assumes some agency on the part of the litigant. Under Rule 15(a)(1), "[a] party may amend its pleading once as a matter of course" within 21 days after service of the

complaint or after a motion to dismiss or other motion requiring a responsive pleading has been filed. "In all other cases," Rule 15(a)(2) explains, "a party may amend its pleading only with the opposing party's written consent or the court's leave." The district judge, of course, "should freely give leave when justice so requires," but the Rule gives no indication that a judge is required to offer parties legal guidance on whether and how to amend their pleadings.

This rule should be different, Kiebala seems to argue, for a *pro se* plaintiff. To be sure, we have held that "district courts have a special responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the *pro se* litigant would be able to state a meritorious claim." *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). In addition to viewing a "*pro se* complaint with an understanding eye," a district court may point a *pro se* litigant toward the correct procedure or "take appropriate measures to permit the adjudication of *pro se* claims on the merits." *Id.*

At the same time, we have tried to make clear that a "court is not to become an advocate." *Id*. District courts are not charged with seeking out legal "issues lurking within the confines" of the *pro se* litigant's pleadings, and the court's duties certainly do "not extend so far as *to require* the court to bring to the attention of the pro se litigant or to decide the *unraised* issues." *Caruth v. Pinkney*, 683 F.2d 1044, 1050 (7th Cir. 1982).

Kiebala's effort to impose such a coaching obligation on the district court is not tenable. According to Kiebala's argument, the district judge should have: (a) read Kiebala's filings expressly disclaiming any interest in reconsideration or amendment of his libel claim, (b) observed that Kiebala's

amended complaint added, for his intentional infliction of emotional distress claim, allegations about a recent internet posting that could have been within the one-year statute of limitations for the dismissed libel claim; (c) disregarded Kiebala's responses to Boris's second motion to dismiss, in which he again emphasized that he had no interest in amending his libel claim; (d) advised Kiebala that the newly alleged post included in his amended claim for intentional infliction of emotional distress might offer a basis to salvage his untimely libel claim from the statute of limitations, and then (e) suggested to Kiebala that he file a second amended complaint following the judge's recommendation as to how to plead his libel claim.

Requiring judges to take such affirmative steps to guide *pro se* plaintiffs' pleadings would force them outside the role of neutral judges. *Hamlin v. Vaudenberg*, 95 F.3d 580, 583 (7th Cir. 1996) (courts are not to "fill in all of the blanks in a pro se complaint"); see also *Doherty v. City of Chicago*, 75 F.3d 318, 323 n.2 (7th Cir. 1996) (noting the "institutional concerns" with "impos[ing] on the court the obligation to make arguments for [a] party that the party has not made for itself"). The district judge did not abuse his discretion either by failing to suggest to Kiebala that he amend the libel claim he had repeatedly said he did not want to amend or by failing to advise Kiebala that a new allegation regarding his intentional infliction of emotional distress claim might avoid the statute of limitations defense to his libel claim.

B. *Statute of Limitations*

Kiebala's libel claim under Illinois law is governed by the one-year statute of limitations on defamation claims. 735 ILCS 5/13-201. The district court dismissed Kiebala's libel claim—as alleged—as barred by that statute of limitations. We review

this ruling *de novo*. *Logan v. Wilkins*, 644 F.3d 577, 581 (7th Cir. 2011).[3]

In his original complaint, the most recent new and allegedly defamatory statement was made one year and one day before Kiebala filed the complaint. The issue on appeal boils down to whether Boris, by marking his 2011 Ripoff Report post as "updated" on July 22, 2015—exactly one year before Kiebala filed his complaint—started a new statute of limitations clock for that alleged libel. Our role in deciding this question of state law is to predict how we think the Supreme Court of Illinois would decide the issue. *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 615 (7th Cir. 2013).

The question of republication of alleged libels has arisen often and was the subject of a proposed uniform statute for states to enact. In relevant part, the Illinois enactment of the Uniform Single Publication Act does not permit a person to "have more than one cause of action for damages for libel" based "upon any single publication or exhibition or utterance, such as any one edition of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture." 740 ILCS 165/1. We have explained that the Act was intended to protect speakers and writers from "repeated

---

[3] Kiebala did not waive his right to press this claim on appeal by failing to re-argue it in response to Boris's second motion to dismiss. To preserve appellate rights, a party need not repeat challenges to a definitive interlocutory ruling. See, e.g., *Ward v. Soo Line Railroad Co.*, 901 F.3d 868, 882 (7th Cir. 2018), quoting *Wilson v. Williams*, 182 F.3d 562, 563 (7th Cir. 1999) (en banc). Kiebala is not entitled, however, to argue in this appeal grounds for sustaining his libel claim that he did not present to the district court.

litigation arising from a single, but mass-produced, defamatory publication." *Pippen*, 734 F.3d at 615.

The 1959 statute codified a common law rule adopted by the Illinois courts long before the internet came along. See *Wheeler v. Dell Pub. Co.*, 300 F.2d 372, 375 & n.4 (7th Cir. 1962). We have already predicted that "the Supreme Court of Illinois would deem the single-publication rule applicable to the Internet." *Pippen*, 734 F.3d at 615 ("Every state court that has considered the question applies the single-publication rule to information online … [a]nd those federal courts that have addressed the topic have concluded that the relevant state supreme court would agree."). We explained that "excluding the Internet from the single-publication rule would eviscerate the statute of limitations and expose online publishers to potentially limitless liability." *Id.*

Illinois courts have not yet considered whether "updating" a previously published internet post, without changing the post's content or placing the content on a new website, is sufficient to escape the single-publication rule. In predicting how the state's highest court would answer a question, we may consider instructive decisions from other jurisdictions. See *Pippen*, 734 F.3d at 615; see also, e.g., *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 811–13 (7th Cir. 2018) (drawing on cases from other states to make *Erie Railroad* prediction of state law). Relying on analogous Illinois state cases and treatment of similar conduct by other courts, we predict the Supreme Court of Illinois would hold that Boris's 2015 marking of his 2011 post as "updated," is, without more, not sufficient to treat the 2011 post as newly circulated or republished such that his claim could avoid the one-year statute of limitations.

The closest guidance from an Illinois court comes from a pre-internet case similar to this one, *Founding Church of Scientology of Washington, D.C. v. American Medical Ass'n*, 377 N.E.2d 158 (Ill. App. 1978). There the plaintiff alleged that the defendant had published a libelous article in its monthly magazine and then several years later "caused reprints and copies of the article to be delivered, distributed and published to three named persons with various newspapers on the east coast, as well as throughout the United States." *Id.* at 159–60.

The court rejected the argument that the later distribution extended the statute of limitations, describing the defendant's action as "nothing more than miscellaneous copies incidental to the general [earlier] publication." *Id.* at 161. The court explained:

> To conclude otherwise and consider them a "republication," would cause havoc with the law of libel and expose a publisher or author to a lawsuit years after his article had first been published simply because he or someone else chose to xerox a copy or two and mail the photocopy to a friend or, for example, to a magazine as part of a letter to an editor.

*Id.* Such an outcome would make no sense, especially "because the article in question might well be on file in libraries, and so open to the public anyway." *Id.* Kiebala's original 2011 post—still available on the same website—could similarly be considered as "on file" and "open to the public anyway," with the later updated-but-unaltered post serving as the equivalent of including the original statement in a "letter to an editor."

Illinois law allows some room to argue that a new publication starts a new clock if the content is changed, at least significantly, or if the new publication is addressed to a new audience. See, e.g., *Hukic v. Aurora Loan Services*, 588 F.3d 420, 437 (7th Cir. 2009) (single publication rule did not apply to creditors' repeated reports of inaccurate information to credit reporting agencies where "the information conveyed did not stay the same"); *Weber v. Cueto*, 624 N.E.2d 442, 452–53 (Ill. App. 1993) (single publication rule did not apply where original publication was privileged report to government authorities and later publication was not privileged and intended for general public).

An Illinois court considered the interplay of these different factors at some length in *Blair v. Nevada Landing Partnership*, 859 N.E.2d 1188 (Ill. App. 2006). Plaintiff Blair had worked for several years as an employee of defendant's steakhouse. During that time, his photograph was used for promotional purposes on defendant's flyers, brochures, signs, billboards, restaurant menus, calendars, postcards, and website. *Id.* at 1189–90. Blair later sued the defendant for appropriating his likeness and violating his right to publicity by using his picture. *Id.* at 1190. The court held that the suit was barred by the one-year statute of limitations because his "cause of action accrue[d] at the time [his] interest [wa]s invaded," i.e., upon the first publication of the photograph. *Id.* at 1193.

Borrowing from the single publication rule for defamation claims, the court found that it did not matter that Blair's picture "was displayed via several mediums over a period of time"; his picture "was used for a single purpose" and to "target[] a single audience." *Id.* The court acknowledged that a republication could "constitute a new cause of action if the

publication is altered so as to reach a new audience or pro-mote a different product." *Id.* at 1194. But the court repeated that, given defendant's use of an "image [that] remained con-stant and was not significantly altered to reach a new audi-ence" and that was used for the "same … purpose" (e.g., "to promote a single product"), it did not matter that it was pub-lished multiple times "via several mediums." *Id.*

These factors have continued to guide Illinois courts when considering a later appearance of allegedly defamatory con-tent on the internet. We have noted that "passive maintenance of a web site" is not considered a republication. *Pippen*, 734 F.3d at 616. Nor have courts been persuaded to start a new statute of limitations clock when defendants "changed the URL where statements were posted but left the statements un-altered," or when "defendants added an unrelated story to [a] web page hosting the allegedly defamatory statement." *Id.*, citing *Canatella v. Van De Kamp*, 486 F.3d 1128, 1135–36 (9th Cir. 2007), *Yeager v. Bowlin*, 693 F.3d 1076, 1083 (9th Cir. 2012), and *Firth v. State*, 775 N.E.2d 463, 463–64 (N.Y. 2002).[4]

We agree with the district court here that a single instance of Boris marking his original 2011 post as "updated," at least

---

[4] Similarly, a federal district court found that publication of new arti-cles and blogposts providing hyperlinks to already-published defamatory material did not start a new statute of limitations period, even though the articles and posts containing the hyperlinks were made in venues that "appeal[ed] to a different type of audience." *Salyer v. Southern Poverty Law Center, Inc.*, 701 F. Supp. 2d 912, 916 (W.D. Ky. 2009) (granting motion to dismiss). The later publication of such a hyperlink is "simply a new means for accessing the referenced article … [m]aking access to the referenced article easier," while lacking "the critical feature of republication"—namely, "that the original text of the article was changed or the contents of the article presented directly to a new audience." *Id*. at 917.

without anything more, did not start a new statute of limitations clock for the alleged defamation. The 2015 "update" was identical in content to the 2011 publication, and the update was intended to reach the same audience, plaintiff Kiebala's potential investors and customers. The single publication rule applies so that the July 22, 2015 post did not revive Kiebala's time-barred claim for defamation.

The judgment of the district court is therefore

AFFIRMED.